UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

TIANA DARRINGTON          *
                          *
          Plaintiff,      *
                          *
v.                        *          Civil Action No.: 1: 23-16-KD-C
                          *
NAVY FEDERAL CREDIT UNION, *
                          *
          Defendant.      *

**REPORT AND RECOMMENDATION**

This case is before the undersigned for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), on Navy Federal Credit Union's ("Navy Federal") Motion to Dismiss the Amended Complaint ("Complaint"), Doc. 10, filed by Tiana Darrington ("Plaintiff"). Navy Federal makes this motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure arguing that Plaintiff has failed to state a claim upon which relief may be granted. Doc. 12. Upon consideration of the motion, a careful examination of the entire record, and in keeping with the purposes of judicial economy, the undersigned recommends that Navy Federal's motion be GRANTED for the following reasons.

## I.      Introduction

Plaintiff is proceeding without counsel and has made a wide variety of assertions against Navy Federal. Her assertions are based on Navy Federal's finance of a Chevrolet Tahoe that Plaintiff purchased in July 2021. The auto loan was memorialized with a written promissory note and secured by the vehicle as collateral.

However, it appears Plaintiff experienced a sort of buyer's remorse where she wanted to keep the vehicle but did not want to repay the loan. To that end, Plaintiff filed the instant litigation requesting that the Court void her loan obligation but allow her to keep the vehicle.

After a thorough review of the record, it is determined that Plaintiff's conclusory statements do not constitute a proper form of pleading and none of Plaintiff's theories provide her the right to void her debt but keep the vehicle. In short, Plaintiff fails to state a claim upon which relief may be granted. On this basis, the undersigned recommends that Plaintiff's Amended Complaint be dismissed.

## II. Factual and Procedural Background[1]

### A. Plaintiff purchased a Chevrolet Tahoe in July 2021.

Plaintiff purchased a 2021 Chevrolet Tahoe ending in Serial Number -3178 (the "2021 Chevy Tahoe") in July 2021. *See* Compl. Ex. 6, Doc. 10. To finance this purchase, Plaintiff executed a check for $74,500 on July 22, 2021, drawn on Navy Federal and payable to the order of Sandy Sansing Chevrolet. Compl. Ex. 7. This check identified the make (Chevrolet), model (Tahoe), year (2021), milage (8401), and

---

[1] While the Court must accept Plaintiff's factual allegations as true on a motion to dismiss, "[t]he Court may consider exhibits attached to the complaint" and "documents attached to a motion to dismiss if they are 'central to the plaintiff's claim' and 'authenticity is not challenged.'" *Moore v. Lowe*, 591 F. Supp. 3d 1087, 1097 (N.D. Ala. 2022) (citing *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000)).

Due to the lack of facts in Plaintiff's Complaint, this recitation of facts is largely derived from the exhibits to Plaintiff's Amended Complaint and Original Complaint. However, because several of Plaintiff's exhibits are incomplete documents, the Court also relies on the complete versions of the documents that Navy Federal attached to its Motion. Plaintiff did not dispute the authenticity of these complete versions of the documents she attached into her Amended Complaint and Original Complaint.

vehicle identification number ("VIN") of the vehicle (ending in -3178). *Id.* It also identified the Navy Federal loan number (loan ending in -9917) and identified that there was a Promissory Note on the reverse of the check. *Id.* Plaintiff signed the check. *Id.*

The reverse side of the check was labeled "Promissory Note Instrument," and stated that "the undersigned promise(s) *in lieu of payment* of this instrument to execute and deliver an amended promissory note, security agreement and perfection documents" and "grant[ed] Navy Federal a security interest or lien on the personal property identified on the reverse hereof." *See* Navy Federal Auto Check, Exhibit A, Doc. 13-1 (emphasis added).[2] Plaintiff signed the Promissory Note Instrument on the back of the check, promising to execute and deliver an amended promissory note, security agreement and loan perfection documents in lieu of monetary payment on the check. *Id.*

**B.  Plaintiff executed a promissory note and security agreement with Navy Federal.**

Per the agreement on the check, Plaintiff subsequently executed an amended promissory note, titled the ePromissory Note, Security Agreement, and Disclosure

---

[2] Plaintiff attached the front side of this check as part of her compilation of documents in Exhibit 7 to her Complaint. *See* Compl. Ex. 7. The complete front and back of the check were attached as Exhibit A to Navy Federal's Motion, Doc. 13-1.

(the "Promissory Note"), with Navy Federal to memorialize the terms of her auto loan. *See* Compl. Ex. 6.[3]

The Promissory Note records that Navy Federal provided $74,899.00 "Cash to Applicant," which constituted the "Amount Financed." *Id.* The Annual Percentage Rate ("APR") of 4.49% was provided in bold type and underlined. *Id.* The "Finance Change," which was the "dollar amount the credit w[ould] cost" Plaintiff, was $10,776.82. *Id.* This, again, was identified with bold type and underlining. *Id.*

| Truth-in-Lending Disclosure | | |
|---|---|---|
| **Annual Percentage Rate** The cost of your credit as a yearly rate | 4.49 % | **Finance Charge** $ 10,776.82 The dollar amount the credit will cost you |

*Id.* The Promissory Note identified that the Amount Financed and Finance Charge totaled to $85,675.82, with 71 monthly payments of $1,189.95 and 1 payment of $1,189.37. *Id.*

The second page of the Promissory Note identified that Navy Federal paid the total cash amount of the loan to Plaintiff. *Id.* at 2. In turn, Plaintiff "promise[d] to pay to the order of Navy Federal" the Amount Financed and Finance Charge "as shown in the payment schedule." *Id.* To guarantee that Plaintiff would fulfill her promise to pay, she pledged the vehicle as collateral. *Id.* at 1 (agreeing that Plaintiff was "pledging a security interest in the collateral described below," which identified the 2021 Chevy Tahoe). The Promissory Note also included a statutory lien on all of Plaintiff's deposit accounts with Navy Federal. *Id.* ("I acknowledge and pledge to Navy Federal a statutory lien in my shares and dividends on deposit in all joint and

---

[3] For unknown reasons, Plaintiff omitted the third page of the Promissory Note, which reflects Plaintiff's electronic signature of the document. The complete Promissory Note was attached to Navy Federal's Motion as Exhibit B, Doc. 13-2.

individual accounts and any monies held by Navy Federal now and in the future, to the extent of the loan made and any charges payable.").

Pursuant to the Uniform Electronic Transactions Act, Plaintiff electronically signed the Promissory Note on July 30, 2021, at 12:34 p.m. *Id.*

## C. Navy Federal responded to Plaintiff's complaints regarding her 2021 Chevy Tahoe auto loan.

Several days after finalizing the loan, Plaintiff lodged a complaint against Navy Federal with the Consumer Financial Protection Bureau ("CFPB"). *See* Compl. Ex. 1. Plaintiff claimed she was disputing the debt, requested verification of the debt, and threatened to sue Navy Federal "if any negative mark is found on any of my credit reports by your company." *Id.* It appears that, after obtaining her SUV, Plaintiff realized that her auto loan to buy the vehicle would be reported to consumer reporting agencies. *See id.*

Navy Federal responded by explaining it had "researched Mrs. Darrington's concerns," but found that Plaintiff had "established her Navy Federal used vehicle loan account ending in 9917 on 30 July 2021." *Id.* Navy Federal "confirmed that [it was] reporting accurate information to the four nationwide credit reporting agencies regarding" the loan and would "not request the removal of valid data from our member's credit file." *Id.*

More than a year later, Plaintiff again complained to the CFPB. *See* Compl. Ex. 2. This time, Plaintiff claimed that Navy Federal misrepresented the Finance Charge as "[t]he dollar amount that the credit will cost you" instead of "[t]he sum of

ALL charges," which "has led to the conclusion that a truthful credit transaction did not occur" and, therefore, "this contract is considered null and void." *Id.* Navy Federal again responded, explaining that it had "researched our member's concerns," and that its records showed that Plaintiff had taken out an auto loan that was memorialized in an ePromissory Note, Security Agreement, and Disclosure, which had been "previously provided for Mrs. Darrington's reference." *Id.*

Plaintiff responded with a "Notice to Cure" sent to Navy Federal dated December 21, 2022. *See* Compl. Ex. 3. Plaintiff claimed that Navy Federal's finance of Plaintiff's 2021 Chevy Tahoe was a "misrepresentation" because it "led [her] to believe this loan came from Navy Federal." *Id.* Plaintiff claimed that "Navy Federal never loaned me anything." *Id.* Plaintiff's basis for her belief that she purchased a vehicle for over $70,000 *without* Navy Federal providing the money is unclear. Plaintiff also asked for a variety of documentation, including a "statement of account." *Id.* Plaintiff ended her letter with a "demand" that Navy Federal "[e]liminate the alleged debt and send a lien release stating the alleged Loan #[ending in -]9917 is paid in full." *Id.* If Plaintiff's demand for a release of her auto lien was not honored, Plaintiff threatened to "take this to Federal Court." *Id.* There is no allegation that Plaintiff actually *paid* the full amount to Navy Federal.

Navy Federal responded via a letter dated January 4, 2023. *See* Original Compl. Ex. 4, Doc. 1.[4] In the response, Navy Federal confirmed that the "debt is a valid debt," identified the outstanding loan balance, and provided supporting

---

[4] Plaintiff omitted this exhibit from her Amended Complaint without explanation. The undersigned refers to the document attached to Plaintiff's Original Complaint.

documentation in the form of the Promissory Note and monthly account statements from October 2022, November 2022, and December 2022. *Id.* Plaintiff attached some of this supporting documentation as Exhibit 5 to her Original Complaint, which included the Promissory Note and the December 2022 monthly statement. *See* Original Compl. Ex. 5. The December 2022 statement showed that Plaintiff was past due on the account. *Id.*

**D.    Procedural History.**

Plaintiff filed the instant case on January 12, 2023, and Navy Federal filed a Motion to Dismiss on February 7, 2023. Doc. 4. Plaintiff was given until March 1, 2023 to respond to the motion to dismiss (see Order, Doc. 6) but chose instead to file an Amended Complaint on February 14, 2023. Doc. 8. Plaintiff's Amended Complaint is substantially like her original Complaint.

On March 15, 2023, Navy Federal filed a second Motion to Dismiss and it was referred to the undersigned for a report and recommendation. Plaintiff was offered the opportunity to respond to the motion if that response was filed on or before March 31, 2023. Doc. 15. Plaintiff did not file a response to the motion and on May 25, 2023, the undersigned entered notice of a preliminary decision that the motion was due to be granted for the reasons presented by the Defendant. Doc. 18. As the prevailing party, Navy Federal was directed to prepare a proposed report and recommendation for consideration by the undersigned.

**III.    Standard of Review**

The plausibility standard for dismissal under Rule 12(b)(6) is well-established. Under Rule 12(b)(6), the Court reviews the factual and legal sufficiency of the complaint. Under Rule 8, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotations marks omitted). Although factual allegations must be accepted as true on a motion to dismiss, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must plead "a claim to relief that is plausible on its face." *Id.* (citing *Twombly*, 550 U.S. at 556, 570). The Court need not accept legal conclusions, inferences, or arguments drawn from the facts. *Id.*

Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' . . . it [does] demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* "Rule 8 does not empower respondent to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss." *Id.* at 687. Quite simply, a "pleading that offers 'legal conclusions' of 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). Thus, "[w]hile legal conclusions can provide the framework of a complaint, *they must be supported by factual allegations*." *Id.* at 679 (emphasis added).

"While pleadings submitted by a *pro se* plaintiff 'are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed,' *Tannenbaum [v. United States]*, 148 F.3d [1262] at 1263, [11th Cir. 1998] '[a] [*pro se*] complaint that fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading constitutes a 'shotgun pleading.' ... prohibited by Rule 8(a)(2).' *Lampkin-Asam v. Volusia Cty. Sch. Bd.*, 261 F. App'x 274, 277 (11th Cir. 2008). As such, even *pro se* complaints that are 'disjointed, repetitive, disorganized and barely comprehensible' may be dismissed. *Id.* at 276."

*Jennings v. KBRwyle Technology Solutions, LLC*, 2021 WL 5968328, at *2 (M.D.Fla., 2021).

## IV.    Analysis.

## A.    Dismissal of Plaintiff's Complaint is required because it is an impermissible "shotgun" pleading.

A "shotgun" pleading fails "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests," in violation of Federal Rule of Civil Procedure 8. *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321–23 (11th Cir. 2015); Fed. R. Civ. P. 8. There are several types of shotgun pleadings, which include complaints that are "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action" and complaints that "commit[] the sin of not separating into a different count each cause of action or claim for relief." *Weiland*, 792 F.3d at 1321–23; *Barmapov v. Amuial*, 986 F.3d 1321, 1325–26 (11th Cir. 2021) (finding that the complaint was "replete with

conclusory, vague, and immaterial" allegations, such that "a defendant who reads the complaint would be hard-pressed to understand 'the grounds upon which each claim [against him] rests'") (citation omitted; alteration in original).

Shotgun pleadings "exact an intolerable toll on the trial court's docket, lead to unnecessary and unchannelled discovery, … impose unwarranted expense on the litigants, the court and the court's parajudicial personnel and resources," and delay justice "for the litigants who are 'standing in line,' waiting for their cases to be heard." *Cramer v. State of Fla.*, 117 F.3d 1258, 1263 (11th Cir. 1997). "Tolerating such behavior constitutes toleration of [the] obstruction of justice." *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1357 (11th Cir. 2018). Because of this, the Eleventh Circuit has "repeatedly held that a District Court retains authority to dismiss a shotgun pleading on that basis alone." *Id.*

Plaintiff's Complaint falls into two different categories of shotgun pleadings— 1) vague and conclusory claims, and 2) failure to identify specific counts. Either reason is sufficient for the Court to summarily dismiss the claims.

First, Plaintiff's Amended Complaint is filled "with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Weiland*, 792 F.3d at 1321–23. For example, in various paragraphs, Plaintiff repeats the idea that when Navy Federal financed her purchase of the 2021 Chevy Tahoe for over $70,000, *see* Compl. Ex. 6, somehow Plaintiff was the *creditor* and Navy Federal was the *debtor*. Compl. ¶ 31 ("Plaintiff, the consumer extended credit to the defendant as a natural person, which makes the plaintiff "the original creditor."). These

nonsensical claims plainly meet the standard for "conclusory, vague" and not "connected to any particular cause of action." *Weiland*, 792 F.3d at 1321–23.

Next, Plaintiff's Amended Complaint includes forty-eight numbered paragraphs. *See generally* Compl. In these paragraphs, Plaintiff identifies numerous potential sources of law under which she brings a claim, including a model provision of the Uniform Commercial Code, but fails to identify *any* of them as a specific "count" for which she seeks relief. *See generally* Compl. (citing numerous legal provisions without any particular designation as a "count"). These undefined claims run directly afoul of the Eleventh Circuit's prohibition on complaints that, like Plaintiff's Complaint, "commit[] the sin of not separating into a different count each cause of action or claim for relief." *Weiland*, 792 F.3d at 1321–23.

In sum, Plaintiff's Complaint fits the definition of a "shotgun" pleading under at least two prohibited categories. The Complaint is subject to dismissal on this ground alone.

**B.  Plaintiff fails to state a claim for which relief can be granted.**

Since Plaintiff failed to identify specific counts in her Complaint, her Complaint should be dismissed in its entirety. Nevertheless, in the interest of a comprehensive review of the claims, dismissal is found to be appropriate because each of Plaintiff's allegations fails to adequately plead a claim.

While the claims are generally unclear, Plaintiff's allegations seem to boil down to several key assertions. These include the following assertions:

- That Navy Federal cannot *lend* money, which somehow transmogrified Plaintiff into the creditor, not the borrower, in her auto finance

transaction. *See, e.g.*, Compl. ¶ 31 (claiming only a natural person can lend money and a bank is not a natural person). Plaintiff then hangs various conclusory allegations off this premise, such as claims that Navy Federal was deceptive in its communications because it represented Plaintiff as the borrower. *Id.* ¶ 34 (claiming fraud in the inducement because Plaintiff "was deceived and tricked into signing a contract thinking plaintiff was the borrower … and not the lender").

- That the Promissory Note is somehow invalid, and Navy Federal lacked the legal authority to collect on it. *See* Compl. ¶¶ 10, 13, 15-16, 18, 29-30, 33-34.

- That Navy Federal did not properly respond to Plaintiff's various complaints. *Id.* ¶¶ 7-12 (claiming Navy Federal failed to respond to Plaintiff's complaints with the CFPB).

None of these allegations contain facts that, even taken as true for the purposes of this motion, state a claim upon which Plaintiff would be entitled to relief. Additionally, beyond these core themes, Plaintiff includes numerous conclusory sentences that likewise fail to plausibly allege facts that state a claim upon which relief could be granted.

1. *Navy Federal as a lender.*

Plaintiff's assertion that Navy Federal cannot lend money and that she is, in fact, the *lender* in the auto finance transaction is inconsistent with both the Promissory Note and the law. *See e.g.*, Compl. ¶ 20. Navy Federal can, and in this situation did, lend money to Plaintiff to finance the purchase of her 2021 Chevy Tahoe. This made Plaintiff the borrower, not the lender.

Further, Navy Federal is authorized to lend money. As its name indicates, "Navy Federal Credit Union is a federally chartered, not-for-profit credit union." *Navy Fed. Credit Union v. LTD Fin. Servs., LP*, 972 F.3d 344, 351 (4th Cir. 2020).

Navy Federal was officially incorporated as a credit union in 1947 pursuant to the Federal Credit Union Act of 1934. *Id.* By law, "[a] Federal credit union … shall have power—... (5) *to make loans*…" 12 U.S.C. § 1757(5) (emphasis added). This means that, as a matter of law, Navy Federal, as a federally chartered credit union, has the explicit authority "to make loans." Plaintiff's allegations otherwise are wrong as a matter of law.

Plaintiff's argument that only a natural person can lend credit under 15 U.S.C. § 1602(i) misreads the statute. Compl. ¶ 31. The statute states that "[t]he adjective 'consumer', used with reference to a credit transaction, characterizes the transaction as one in which the *party to whom credit is offered or* extended is a natural person, and the money, property, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1602(i) (emphasis added). This definition of "consumer" merely explains when a credit transaction would be considered a consumer transaction, as opposed to a business transaction. Once of the requirements for a matter to be a "consumer" transaction is that the credit is offered or extended *to* a natural person. Here, Plaintiff, as a natural person, was the party *to whom* credit was extended, thus meeting this portion of the definition of a consumer transaction.

Further, Plaintiff cannot in good faith claim that Navy Federal did *not* lend money to her. In fact, Plaintiff attached to her Complaint the Promissory Note memorializing this auto loan. *See* Compl. Ex. 6. Plaintiff even attached to her Original Complaint her December 8, 2022 monthly account statement showing a

remaining balance on Plaintiff's auto loan of $61,511.15. *See* Original Compl. Ex. 5.

Moreover, Plaintiff does not dispute that because of her transaction with Navy Federal she obtained the 2021 Chevy Tahoe, which has been in her possession for nearly two years since she first purchased it with the funds provided by Navy Federal. In fact, in her prayer for relief, Plaintiff asks the Court to "rescind this transaction," "to terminate any security interest created under this transaction," but for "the plaintiff to *keep* the property in the plaintiff's possession and to refund all payments made by the consumer in connection with the transaction." *See* Compl. Relief (emphasis added). Plaintiff does not allege any contrary facts.

Thus, Navy Federal has the legal authority to make loans. It did so here, as memorialized by the Promissory Note attached to Plaintiff's Complaint. Plaintiff did not loan this money to Navy Federal and at the same time use it to purchase a vehicle for her own use. That would be illogical. Plaintiff's claims that rest on the theory that Plaintiff is somehow the creditor, not the debtor, should be dismissed for failure to plausibly state a claim.

2. *The Promissory Note is a valid contract with consideration.*

Despite admitting that she "entered a consumer credit transaction with the defendant on July 30[,] 2021" that was memorialized with "a promissory note, security agreement, and TILA Disclosures," Compl. ¶ 5, Plaintiff seems to think the Promissory Note is somehow invalid. Compl. ¶¶ 16, 18, 29-30, 33-34. While Plaintiff's assertion on this point generally seems to rest on the idea, addressed above, that Plaintiff is the lender, not the borrower, Plaintiff also includes vague language

14

about the contract lacking consideration, failure to include proper disclosures, and failure of mutual asset to the contract terms.

To the extent Plaintiff is seeking judgment that the Promissory Note is invalid for lack of consideration, Plaintiff has not properly pled such a claim. "It is a well-settled general rule that consideration is an essential element of, and is necessary to the enforceability or validity of, a contract." *Kelsoe v. Int'l Wood Prod., Inc.*, 588 So. 2d 877, 878 (Ala. 1991). "So long as there is a valuable consideration moving from one side to the other, or there are binding promises on the part of each party to the other, there is adequate consideration for a valid contract." *Marcrum v. Embry*, 291 Ala. 400, 403 (1973). Here, Navy Federal agreed to fund Plaintiff's purchase of the 2021 Chevy Tahoe in exchange for Plaintiff's promise to pay Navy Federal the amount of the loan plus the finance charge. *See* Compl. Ex. 6. This constitutes consideration given from each party. Further, the Promissory Note itself is evidence of consideration for the execution of the contract. *Ladner & Co. Real Est. Sales v. Smith*, 277 Ala. 185, 188 (1964) ("[A] note sued on is prima facie evidence of sufficient consideration for the execution thereof….").

Likewise, the Promissory Note evidences the meeting of the minds that resulted in mutual asset to the terms of the agreement. It is well established that "any argument that the Agreements are invalid for want of mutual assent because plaintiffs could not read them is foreclosed by black-letter Alabama law. 'A party to a contract is responsible for reading the contract' before signing it." *Scurtu v. Int'l Student Exch.*, 523 F. Supp. 2d 1313, 1320 (S.D. Ala. 2007) (quoting *Advance Tank*

*and Const. Co. v. Gulf Coast Asphalt Co.*, 968 So.2d 520, 528 (Ala. 2006)). Moreover, "'[u]nder Alabama law, a party's signature to a contract manifests assent to its terms.' … By signing the contract, plaintiff assented to the express terms of the contract." *Watson v. U.S. Bank Nat'l Ass'n Inc.*, No. CV 05-0244-CG-C, 2006 WL 8437757, at *2 (S.D. Ala. July 7, 2006) (citation omitted). Contrary to Plaintiff's claim, Navy Federal clearly provided Plaintiff with material credit information as memorialized in the Promissory Note. *Cf.* Compl. ¶ 38.

The plain language of the Promissory Note undercuts Plaintiff's remaining conclusory assertions that the interest rate and finance charge were not properly determined or displayed or that the Promissory Note lacked written disclosures. *See* Compl. ¶¶ 30, 35, 36. The Promissory Note conspicuously displays and properly computes the Annual Percentage Rate and Finance Charge terms. *See* Compl. Ex. 6 (showing Annual Percentage Rate and Finance Charge in bold lettering with underlining for emphasis). Further, the Promissory Note included an explicit TILA disclosure. *Id.* (including heading for "Truth-in-Lending Disclosure" with box around text of disclosure for clarity).

For these reasons, Plaintiff's variety of assertions that the Promissory Note is somehow invalid do not state a claim and should be dismissed.

3. *Navy Federal could collect on the Promissory Note.*

Perhaps anticipating that the Court will find that the Promissory Note is a valid contract, Plaintiff makes a variety of statements that assert the same basic claim: Navy Federal improperly collected on her auto loan. *See* Compl. ¶ 10 (arguing

debt was disputed and reporting the tradeline constituted "debt parking"); ¶ 13-15 (improper setoff from Plaintiff's deposit account when she failed to pay); ¶ 24 (claiming it is unfair and unconscionable to send a billing statement); ¶ 44 (reporting account to credit reporting agencies). None of these claims have merit.

Navy Federal may enforce the terms of the Promissory Note by collecting on the debt. First, Plaintiff's attempts to dispute a valid debt do not obviate her obligations on the auto loan. For the reasons stated above, Plaintiff has a legal obligation under the Promissory Note to pay the debt. *See* Compl. Ex. 6 (Plaintiff "hereby promise(s) to pay to the order of Navy Federal the amount shown in the Truth-in-Lending Disclosure on the reverse, with interest on the unpaid balance at the Annual Percentage Rate (APR) as shown in the payment schedule."). Moreover, Plaintiff does not identify any way that it is unfair or unconscionable to send a billing statement for an outstanding loan. *See, e.g.*, 12 C.F.R. § 1026.41 (federal regulation requiring periodic account statements on outstanding mortgage loans).

Next, contrary to Plaintiff's claim, Navy Federal did not improperly report this tradeline to a credit reporting agency. Under the Fair Credit Reporting Act, Navy Federal may report Plaintiff's loan account to consumer reporting agencies so long as the reported information is accurate and not misleading. *See* 15 U.S.C. § 1681s-2(a). Plaintiff does not plausibly allege that the information reported by Navy Federal was inaccurate based on the Promissory Note. Yet, Plaintiff claims that Navy Federal is guilty of "debt parking." Compl. ¶ 10. According to the Federal Trade Commission ("FTC") blog, so-called debt parking is "the practice of placing purported debts on

consumers' credit reports without first attempting to communicate with the consumer about the debt." Lesley Fair, *Setting the debt parking brake*, FTC.gov (Nov. 30, 2020), *available at* https://bit.ly/3Jhr3Tk. Importantly, these are "bogus or highly questionable debts." *Id.* This does not apply here since Plaintiff's account, unlike those referenced on the FTC blog, is memorialized in an enforceable Promissory Note. It is neither bogus nor highly questionable.

Finally, Navy Federal had the legal authority to draft funds from Plaintiff's deposit accounts when she failed to make her payments because Navy Federal had statutory liens against her deposit accounts per the terms of the Promissory Note. *See* Compl. Ex. 6 ("I acknowledge and pledge to Navy Federal a statutory lien in my shares and dividends on deposit in all joint and individual accounts and any monies held by Navy Federal now and in the future, to the extent of the loan made and any charges payable."); *Rio v. Army Aviation Ctr. Fed. Credit Union*, 82 B.R. 138, 143 (M.D. Ala. 1986) (recognizing credit union had banker's lien upon debtors' checking account when the "credit plan explicitly declares that shares and deposits are security for the credit"); *see also* 10 Am. Jur. 2d Banks and Financial Institutions § 848 ("Generally, when a depositor is indebted to a bank, and the debts are mutual, that is, between the same parties and in the same right, the bank may apply the deposit, or such portion thereof as may be necessary, to the payment of the debt due it by the depositor, provided there is no express agreement to the contrary and the deposit is not specifically applicable to some other particular purpose.").

For these reasons, all of Plaintiff's assertions that Navy Federal could not collect on the Promissory Note are due to be dismissed.

      4. *Navy Federal properly responded to Plaintiff's various complaints.*

Next, Plaintiff claims that Navy Federal did not properly respond to her various complaints. Compl. ¶¶ 7-12, 25, 37. Again, the law and facts (both as pled and as shown in the documents attached to Plaintiff's Complaint) defeat these claims. As a threshold matter, Plaintiff incorrectly alleges that Navy Federal is a debt collector subject to the Fair Debt Collection Practices Act ("FDCPA"). Compl. ¶¶ 16, 21. This is inaccurate. The FDCPA explicitly excludes from the definition of a debt collector someone who is collecting a debt that they originated. 15 U.S.C. § 1692a(6). Here, the Promissory Note makes clear that Navy Federal was the original lender on the auto loan at issue. *See* Compl. Ex. 6, at 2 (Navy Federal agreeing to pay the cash amount of loan). Hence, Plaintiff's claims against Navy Federal under the FDCPA must be dismissed as a matter of law. *Complete Cash Holdings, LLC v. Powell*, 239 So. 3d 550, 559 (Ala. 2017) ("[A]s Powell's creditor, Complete Cash is not included within the definition of 'debt collector' in the FDCPA.").

Further, Plaintiff's claim that Navy Federal did not properly respond to her various complaints is belied by the fact that Plaintiff attached to her Complaint actual responses by Navy Federal to her CFPB complaints and the supporting documentation. For example, in Exhibit 2, Plaintiff submitted a complaint to the CFPB on October 12, 2022, which Navy Federal responded to as follows:

      The following references the complaint we received on 12 October 2022 from the Consumer Financial Protection Bureau (CFPB) on behalf of

Navy Federal member Tiana P. Darrington. The complaint was assigned a case number of 221012-9558420. *We have researched our member's concerns.* As we advised in our response to CFPB case numbers 210917-7278779 and 220402-8433953, our records show that *Mrs. Darrington established her Navy Federal used vehicle loan account ending in 9917 on 30 July 2021.* This is a valid debt, and Mrs. Darrington remains responsible for the repayment of this account, in accordance with the ePromissory Note, Security Agreement, and Disclosure she executed. *A copy of the ePromissory Note, Security Agreement, and Disclosure was previously provided for Mrs. Darrington's reference.* The vehicle title to the 2021 Chevrolet Tahoe serving as collateral for the loan will not be returned to our member until the loan account is paid in full. Should Mrs. Darrington have any further questions, she may contact us toll-free anytime by calling 1-888-842-NFCU (6328).

Compl. Ex. 2, at 3 (emphasis added). Plaintiff cannot in good faith dispute that Navy Federal provided her the supporting documentation showing the auto loan debt was valid because Plaintiff *attached the documentation to her Complaint—i.e.,* the Promissory Note. *See* Compl. Ex. 6.

Similarly, Plaintiff attached as Exhibit 4 to her Original Complaint a letter dated January 4, 2023, from Navy Federal responding to Plaintiff's continued complaints. *See* Original Compl. Ex. 4. In this letter, Navy Federal specifically stated that it "confirm[ed] that this debt is a valid debt," provided the outstanding balance on the account of $61,473.62, and enclosed a copy of the ePromissory Note, Security Agreement and Disclosure and the account statements for October 2022, November 2022, and December 2022. *Id.* Additionally, Navy Federal explained that it had previously confirmed in writing that this debt was valid on June 23, 2022, and informed Plaintiff that if she had concerns about how the information was reported to the credit bureaus, she should inform Navy Federal in writing. *Id.* That Plaintiff did, in fact, receive a copy of her Promissory Note validating her outstanding debt is,

again, demonstrated by Plaintiff attaching a copy of this document to her Complaint as Exhibit 5. *See* Compl. Ex. 6.

In sum, the FDCPA does not apply here as a matter of law – and even if it did, Plaintiff's exhibits to both her original and Amended Complaint show that Navy Federal properly responded to her complaints. Plaintiff has not plausibly alleged any contrary facts. Hence, all claims based on this premise should be dismissed. *See* Compl. ¶¶ 7-12, 25.

5. *None of Plaintiff's remaining allegations state a plausible claim for relief.*

Beyond the claims above, Plaintiff asserts several conclusory sentences that fail to state a plausible claim upon which relief may be granted.

a. *Definitions contained in statutes do not provide private causes of action.*

Among Plaintiff's conclusory claims are statements that merely cite to statutory definitions but do not identify any legal obligation or corresponding private cause of action. Definitions contained in statutes do not create causes of action. All such statements must be summarily dismissed for failure to state a claim. *See, e.g.*, Compl. ¶ 28 (citing the definition of "cash advance" in 16 CFR 433.1(d) but not identifying any legal obligation or facts showing that the legal obligation was violated); *id.* ¶ 41 (same thing with respect to "adequate notice" under 15 U.S.C. 1602(k), claiming nonsensically that Plaintiff failed to receive "adequate notice" that the "transaction was initiated from my social security card").[5]

---

[5] Plaintiff mentions several times the idea that her auto loan was somehow issued using her social security card under 15 U.S.C. § 1602. *See* Compl. ¶¶ 22, 32, 41. Plaintiff appears to be basing her statements on the Internet hoax that every American has a secret bank account accessible through use of their social security number, which has been repeatedly repudiated

b. *Plaintiff has not alleged a violation of the Alabama UCC for failure to provide a statement of account.*

Next, Plaintiff alleges that Navy Federal failed to properly respond to her Notice to Cure letter requesting documentation required by the UCC. Compl. ¶¶ 39-40. The Notice to Cure letter asked for a "statement of account."[6] *See* Compl. Ex. 3. The UCC is a model code that does not itself impose any legal obligation. *In re Gutierrez* (Bankr. D.P.R. 2015) ("The Model Uniform Commercial Code ('UCC') was created in 1952 and consists of uniform rules coordinating the sale of goods and other commercial transactions throughout the 50 United States. It was created by the National Conference of Commissioners on Uniform State Laws and the American Law Institute. It is not an enforceable law unless it is expressly adopted through state legislation.") (citation omitted).

---

by government sources. *See, e.g.*, *Consumer Scam Alert and Update*, New York Fed (Jan. 2021), *available at* https://www.newyorkfed.org/banking/frscams.html ("The Federal Reserve Bank of New York has become aware of a scam involving videos claiming that at birth, every U.S. citizen has a "secret" account established at a Federal Reserve Bank that could be used by that individual to buy items or pay off loans or debts. These claims are fraudulent and false. There are no such accounts—they do not exist now, nor have they ever existed. This is an internet hoax that has caused much financial pain to the public."); *Consumer Scam Alert: Do Not Use Federal Reserve Routing Account Numbers to Pay Bills; Could Face Late Fees, Other Charges*, Atlanta Fed (July 12, 2017), *available at* https://www.atlantafed.org/news/pressreleases/atlantafed/2017/0712-consumer-scam-alert-fr-routing-numbers.aspx (warning consumers about scam); McKenzie Sadeghi, *Fact check: Social Security numbers not linked to bank account with the Federal Reserve*, USA Today (May 27, 2021, 11:04 AM), *available at* https://bit.ly/3ZHgQ9r (explaining scam).

[6] Plaintiff's Complaint refers to a "request for an accounting." Compl. ¶ 39. This appears to be a typo because Plaintiff relies on the Notice to Cure in Exhibit 3, which requested a "statement of account," which is different from a "request for an accounting." *See* Compl. *Ex. 3.* To the extent Plaintiff is attempting to state a claim that Navy Federal failed to provide her an accounting following her Notice to Cure, this was not requested in the Notice to Cure so Navy Federal would not have had any obligation to provide it.

To the extent Plaintiff brings a claim under *Alabama's* version of the UCC, Plaintiff's demand was insufficient to trigger any obligation by Navy Federal and, moreover, Plaintiff's own exhibits show that Navy Federal provided the information Plaintiff requested.

In her "Notice to Cure," Plaintiff requested a statement of account:

> 3. According to UCC 9-210 I request that Navy Federal Credit Union, provide a statement of ACCOUNT showing that the Loan amount came from Navy Federal Credit Union's account <u>within 14 days</u> after receipt by sending to the alleged debtor an authenticated record.

*See* Compl. Ex. 3.

Under Ala. Code § 7-9A-210(b), a secured party must respond within fourteen days to a "request regarding a statement of account." A "statement of account" is defined as "a record authenticated *by a debtor* requesting that the recipient approve or correct a statement indicating *what the debtor believes* to be the aggregate amount of unpaid obligations secured by collateral as of a specified date and reasonably identifying the transaction or relationship that is the subject of the request." Ala. Code § 7-9A-210(a)(4) (emphasis added).

Plaintiff's Notice to Cure letter failed to provide a "record authenticated" by Plaintiff asking that Navy Federal "approve or correct a statement indicating what [*Plaintiff*] *believes* to be the aggregate amount of unpaid obligations." To the contrary, Plaintiff did not identify *any* amount that she believed to be the aggregate amount of her unpaid obligations. Regardless, Navy Federal *provided* the information required by a statement of account by providing Plaintiff a copy of her Promissory Note and December 2022 Statement. *See* Original Compl. Exs. 4 & 5.

Plaintiff's allegations implicating violations of the UCC fail because Plaintiff has not plausibly alleged any claim for violation of the Alabama UCC.

c. *Allegations of fraud when Plaintiff executed a check to Sandy Sansing Chevrolet with a Promissory Note Instrument on the back.*

Plaintiff claims that Navy Federal committed fraud because the auto check came from Plaintiff's account since it was made out in her name. Compl. ¶¶ 16-17. A claim for fraud has not been presented.

Based on the undersigned's review of the alleged facts and documents attached to the pleadings, Plaintiff wrote a check, drawn on Navy Federal, to the Sandy Sansing auto dealership to purchase a 2021 Chevy Tahoe. Compl. Ex. 7. On the *back* of this check, Plaintiff agreed that, instead of paying on the check, she would execute and deliver an amended promissory note to Navy Federal. *See* Auto Check, Exhibit A (emphasis added). This process allowed Plaintiff to pay Sandy Sansing with money she *borrowed* from Navy Federal based on Plaintiff's promise to repay Navy Federal with interest. Compl. Ex. 6. This is memorialized in the Promissory Note that Plaintiff executed and delivered to Navy Federal. *See id.* Plaintiff has not alleged *any* facts to indicate that this transaction was fraudulent in any way.

d. *Plaintiff's claim to notice of a right of rescission.*

Next, Plaintiff claims that Navy Federal failed to give her full disclosure concerning her right of rescission pursuant to 15 U.S.C. § 1635. Compl. ¶¶ 42-43. The problem is that Plaintiff did not *have* any right of rescission under 15 U.S.C. § 1635. Under § 1635(a), "[e]xcept as otherwise provided in this section, in the case of

any consumer credit transaction … in which a security interest, … is or will be retained or acquired in any property which is used as the *principal dwelling* of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day…." 15 U.S.C. 1635(a). Plaintiff does not allege that her Navy Federal auto loan was ever secured via her principal dwelling, making this provision inapplicable.

e. *Plaintiff's claim against Navy Federal for violation of the Federal Trade Commission's Holder in Due Course Rule.*

Finally, Plaintiff references the Federal Trade Commission's "Holder in Due Course" rule, *See* Compl. ¶¶ 26-27, "which 'preserves a consumer's right to assert the same legal claims and defenses against the assignee of a credit contract as that consumer could have asserted against the assignor.'" *Rivera v. Berlin City's Vermont Remarketed Autos, Inc.*, No. 2:19-CV-00159, 2020 WL 289464, at *3 (D. Vt. Jan. 21, 2020) (citation omitted). As demonstrated by the Promissory Note, Navy Federal is not a holder in due course because it is the original creditor, not a subsequent holder of the loan. *See* Compl. Ex. 6. Regardless, there is no private cause of action for violation of the Holder in Due Course rule. *MidFirst Bank v. Craige*, No. CV 16-3941, 2017 WL 2311740, at *5 (E.D. La. May 26, 2017) (dismissing claims for Holder Rule because it "does not provide a private cause of action"); *Lee v. Forest River, Inc.*, No. CV 17-2103, 2017 WL 4076028, at *4 (E.D. La. Sept. 14, 2017) ("[T]he Holder Rule does not provide a separate cause of action…."); *United States v. Hollis*, No. SA-08-CV-0362 NN, 2008 WL 4179474, at *2 (W.D. Tex. Sept. 7, 2008) ("Hollis may not seek

to affirmatively enforce the regulation, as any alleged violation does not give rise to a private cause of action, but only gives rise to enforcement by the FTC. Because 16 C.F.R. § 433.2 does not provide Hollis with a private cause of action, Count I fails to state a claim upon which relief may be granted.").

## V.    Conclusion

For the reasons above, the undersigned recommends that the Court grant Navy Federal's Motion to Dismiss Plaintiff's Amended Complaint in its entirety with prejudice.

### Notice of Right to File Objections

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c).  The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object.  In the absence of a proper objection, however, the court may review on appeal for plain error, if necessary, "in the interest of justice."  11th Cir. R. 3-1.  In order to be specific, an objection must identify the specific finding or recommendation

to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 27th day of June, 2023.

 s/William E. Cassady
**UNITED STATES MAGISTRATE JUDGE**